# 23-6279

*To Be Argued By*:
LARA POMERANTZ

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

### Docket No. 23-6279

➤◆◆◆➤

UNITED STATES OF AMERICA,

*Appellant,*

—v.—

MURRAY HUBERFELD,

*Defendant,*

NORMAN SEABROOK,

*Defendant-Appellee.*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE UNITED STATES OF AMERICA

EDWARD Y. KIM,
*Acting United States Attorney
for the Southern District
of New York,
Attorney for the United States
of America.*
26 Federal Plaza, 37th Floor
New York, New York 10278
(212) 637-2200

LARA POMERANTZ,
DANIELLE R. SASSOON,
*Assistant United States Attorneys,
Of Counsel.*

# TABLE OF CONTENTS

PAGE

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . .   1

Statement of Issue Presented for Review . . . . . . . . .   2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . .   2

    A.  Procedural History . . . . . . . . . . . . . . . . . . . . .   2

    B.  Statement of Facts . . . . . . . . . . . . . . . . . . . . .   4

        1.  Seabrook's Retrial . . . . . . . . . . . . . . . .   4

        2.  Seabrook's Sentencing and Direct
            Appeal . . . . . . . . . . . . . . . . . . . . . . . . . .   7

        3.  Huberfeld's Conviction, Sentencing,
            and Appeal . . . . . . . . . . . . . . . . . . . . . .   11

        4.  Rechnitz's Conviction, Sentencing,
            and Appeal . . . . . . . . . . . . . . . . . . . . . .   13

        5.  Seabrook's Section 2255 Petition and
            Rule 33 Motion . . . . . . . . . . . . . . . . . . .   15

        6.  Seabrook's Motion To Reduce His
            Sentence . . . . . . . . . . . . . . . . . . . . . . . .   15

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . .   18

ARGUMENT—The District Court Abused Its Discretion
    by Granting Seabrook's Motion for a Sentence
    Reduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

    A.  Applicable Law . . . . . . . . . . . . . . . . . . . . . . .   19

ii

PAGE

1.  18 U.S.C. § 3582(c)(1)(A)
    Generally . . . . . . . . . . . . . . . . . . . . . . .  19

2.  "Extraordinary and Compelling Reasons"
    Under Section 3582(c)(1)(A) . . . . . . . .  20

B.  Discussion . . . . . . . . . . . . . . . . . . . . . . . . .  21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

## TABLE OF AUTHORITIES

*Cases*:

*Dillon v. United States*,
    560 U.S. 817 (2010). . . . . . . . . . . . . . . . . . . . . 19, 30

*Gall v. United States*,
    552 U.S. 38 (2007). . . . . . . . . . . . . . . . . . . . . . . . 26

*Kimbrough v. United States*,
    552 U.S. 85 (2007). . . . . . . . . . . . . . . . . . . . . . . . 29

*Seabrook v. United States*,
    No. 22-841, 2023 WL 7489961
    (2d Cir. Nov. 13, 2022) . . . . . . . . . . . . . . . . . . . . 15

*United States v. Alcius*,
    952 F.3d 83 (2d Cir. 2020) . . . . . . . . . . . . . . . . . 28

*United States v. Amato*,
    48 F.4th 61 (2d Cir. 2024) . . . . . . . . . . . . . . . . . 23

*United States v. Broxmeyer*,
    699 F.3d 265 (2d Cir. 2012) . . . . . . . . . . . . . . . . 30

iii

PAGE

*United States v. Cabot,*
    755 F. App'x 75 (2d Cir. 2018) . . . . . . . . . . . . . . . 29

*United States v. Cain,*
    487 F.3d 1108 (8th Cir. 2007) . . . . . . . . . . . . . . . 29

*United States v. Cavera,*
    550 F.3d 180 (2d Cir. 2008) . . . . . . . . . . . . . . . . 27

*United States v. Doria,*
    753 F. App'x 1 (2d Cir. 2018) . . . . . . . . . . . . . . . 29

*United States v. Ebbers,*
    458 F.3d 110 (2d Cir. 2006) . . . . . . . . . . . . . . . . 29

*United States v. Esso,*
    486 F. App'x 200 (2d Cir. 2012) . . . . . . . . . . . . . 28

*United States v. Felder,*
    722 F. App'x 62 (2d Cir. 2018) . . . . . . . . . . . . . . 29

*United States v. Fernandez,*
    104 F.4th 420 (2d Cir. 2024) . . . . . . . . . . . *passim*

*United States v. Fernandez,*
    443 F.3d 19 (2d Cir. 2006) . . . . . . . . . . . . . . 28, 29

*United States v. Fiumano,*
    721 F. App'x 45 (2d Cir. 2018) . . . . . . . . . . . . . . 29

*United States v. Florez,*
    447 F.3d 145 (2d Cir. 2006) . . . . . . . . . . . . . . . . 29

*United States v. Frias,*
    521 F.3d 229 (2d Cir. 2008) . . . . . . . . . . . . . . 28, 30

*United States v. Halvon,*
    26 F.4th 566 (2d Cir. 2022) . . . . . . . . . . . . . . 19, 20

iv

PAGE

*United States v. Kanagbou,*
    726 F. App'x 21 (2d Cir. 2018) . . . . . . . . . . . . . . . 28

*United States v. Rechnitz,*
    75 F.4th 131 (2d Cir. 2023) . . . . . . . . . . . . . . . . 14

*United States v. Riggi,*
    410 F. App'x 388 (2d Cir. 2011) . . . . . . . . . . . . . 28

*United States v. Roney,*
    833 F. App'x 850 (2d Cir. 2020) . . . . . . . . . . . . . 16

*United States v. Seabrook,*
    814 F. App'x 661 (2d Cir. 2020) . . . . . . . . . . . 4, 11

*United States v. Seabrook,*
    968 F.3d 224 (2d Cir. 2020) . . . . . . . . . 5, 6, 12, 26

*United States v. Willis,*
    476 F.3d 103 (2d Cir. 2007) . . . . . . . . . . . . . . . . 29

*Statutes, Rules & Other Authorities:*

18 U.S.C. § 3553(a)(6) . . . . . . . . . . . . . . . . . . . . . 27, 28

18 U.S.C. § 3582(c)(1)(A) . . . . . . . . . . . . . . . . . . . 19, 20

U.S.S.G. § 2B4.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Fernandez,*
    No. 22-3122, Brief for the United States of
    America, 2023 WL 2756176 n.3 . . . . . . . . . . 21, 25

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 23-6279

———————

UNITED STATES OF AMERICA,

*Appellant,*

—v.—

MURRAY HUBERFELD,

*Defendant,*

NORMAN SEABROOK,

*Defendant-Appellee.*

———————

## BRIEF FOR THE UNITED STATES OF AMERICA

———————

### Jurisdictional Statement

The United States of America appeals from an order entered on February 24, 2023, in the United States District Court for the Southern District of New York, by the Honorable Alvin K. Hellerstein, United States District Judge, granting Norman Seabrook's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).

The Government filed a timely notice of appeal on March 24, 2023. The jurisdiction of this Court is

2

invoked pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b). The Solicitor General has authorized the prosecution of this appeal.

## Statement of Issue Presented for Review

Whether the District Court abused its discretion under 18 U.S.C. § 3582(c)(1)(A) by reducing the defendant's sentence to time served based on finding that the difference between the original sentence imposed on the defendant, who proceeded to trial, and the sentences imposed on a co-defendant who pleaded guilty and another who cooperated with the Government, constituted an "extraordinary or compelling reason" for a sentence reduction.

## Statement of the Case

### A. Procedural History

Indictment 16 Cr. 467 (ALC) was filed on July 7, 2016, in two counts. It alleged that Seabrook, then the president of the New York City Correction Officers Benevolent Association ("COBA"), a municipal correction officers union, participated in a kickback scheme in which he agreed to steer millions of dollars of COBA's money into investments with Platinum Partners, a hedge fund founded by Murray Huberfeld, in exchange for personal kickback payments. Count One charged Seabrook and Huberfeld with conspiring to commit honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 1349. Count Two charged Seabrook and Huberfeld with honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2. The case was

3

initially assigned to the Honorable Andrew L. Carter, United States District Judge.

Trial commenced on October 23, 2017, and ended on November 16, 2017, when Judge Carter declared a mistrial after the jury was unable to reach a verdict against either defendant on either count. The case was subsequently reassigned to Judge Hellerstein.

Superseding Indictment S1 16 Cr. 467 (AKH) (the "Superseding Indictment") was filed on May 17, 2018, in three counts. The Superseding Indictment charged Seabrook and Huberfeld with the same counts previously alleged in the first indictment, and added an additional count of wire fraud against Seabrook, alleging that he deprived COBA of the intangible right to control its assets. Judge Hellerstein subsequently granted Seabrook's motion to dismiss the right-to-control fraud count on multiplicity grounds.

On May 25, 2018, Huberfeld pleaded guilty, pursuant to a written plea agreement with the Government, to Superseding Information S2 16 Cr. 467 (AKH), which charged Huberfeld with conspiring to commit wire fraud, in violation of 18 U.S.C. § 371.

Seabrook again proceeded to trial, which commenced on August 1, 2018, and ended on August 15, 2018, when he was convicted of both counts.

On February 8, 2019, Judge Hellerstein sentenced Seabrook to a term of 58 months' imprisonment, to be followed by three years' supervised release, and imposed a $200 mandatory special assessment and $19 million in restitution to COBA.

4

On August 4, 2020, this Court affirmed Seabrook's judgment of conviction. *See United States v. Seabrook*, 814 F. App'x 661 (2d Cir. 2020).

On October 27, 2021, Seabrook moved under 28 U.S.C. § 2255 to vacate his convictions and sentence on various grounds, and for a new trial under Federal Rule of Criminal Procedure 33 based on newly discovered evidence. On March 9, 2022, and August 10, 2022, the District Court denied Seabrook's Section 2255 and Rule 33 claims, including Seabrook's claim that his prison term should be reduced to remedy an unwarranted sentence disparity between him and his co-defendants. Seabrook appealed parts of the District Court's decision and on November 13, 2023, this Court affirmed.

On October 31, 2022, Seabrook filed a motion in the District Court seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). In an order entered on February 24, 2023, Judge Hellerstein granted the motion, reducing Seabrook's sentence from 58 months' imprisonment to time served, amounting to approximately 21 months' imprisonment.

## B. Statement of Facts

### 1. Seabrook's Retrial

At Seabrook's retrial in August 2018, the Government proved that while serving as President of COBA and on its Executive Board, Seabrook defrauded COBA, New York City's largest correction officers union and the largest municipal jail union in the United States, which represented over 20,000 active and

retired correction officers in New York City. (PSR ¶ 11).[1] During the charged conduct, Seabrook controlled the union's finances, including administration of its "Annuity Fund," a retirement benefits program funded by the City of New York that invested more than $70 million for correction officers' retirements. (PSR ¶ 11). Seabrook agreed with co-conspirators Huberfeld and Jona Rechnitz to invest millions of dollars of COBA's money with Huberfeld's hedge fund, Platinum, in exchange for kickbacks. *See United States v. Seabrook*, 968 F.3d 224, 227 (2d Cir. 2020); (PSR ¶ 6, 11-17).

Rechnitz was a real estate businessman who was friendly with Huberfeld and had done business with him. (PSR ¶ 12). Rechnitz knew that Huberfeld was looking to attract more public and institutional investors to Platinum. (PSR ¶ 12). Toward the end of 2013, Rechnitz suggested to Seabrook that Seabrook might be able to make money personally by investing COBA's money into Platinum. (Tr. 636). Seabrook, who told

---

[1]    "PSR" or "Presentence Report" refers to the Presentence Investigation Report prepared by the United States Probation Office in connection with Seabrook's sentencing; "A." refers to the appendix filed with this brief; "Tr." refers to the transcript of Seabrook's August 2018 retrial; "GX" refers to a Government exhibit introduced at Seabrook's retrial; and "Dkt." refers to an entry on the District Court's criminal docket in 16 Cr. 467 (AKH). Unless otherwise noted, case text quotations omit internal quotation marks, citations, footnotes, and previous alterations.

6

Rechnitz that he controlled COBA's retirement fund, agreed. (Tr. 637). Seabrook told Rechnitz that he worked hard to invest COBA's money and was not getting anything out of it, and said that, "It's time Norman Seabrook got paid." (Tr. 637; PSR ¶ 12).

Before COBA invested in Platinum, its attorneys conducted due diligence and wrote letters—including a letter addressed to COBA's Board of Trustees—that expressed concerns about investing in a higher-risk vehicle like Platinum. (PSR ¶ 13). Seabrook concealed these letters, and the attorneys' concerns, from COBA's board in order to secure the board's approval for the investment. (PSR ¶ 13). In 2014, Seabrook caused COBA to invest $20 million in Platinum—$15 million from a COBA retirement fund and $5 million from a fund intended to help COBA meet its day-to-day costs. (PSR ¶ 17). Seabrook made the $5 million investment without even informing COBA's board or seeking its approval. (PSR ¶ 13).

At the end of 2014, Seabrook received his first personal benefit from his corrupt bargain—$60,000 in cash, delivered by Rechnitz in a luxury Ferragamo handbag. *See Seabrook*, 968 F.3d at 228; (PSR ¶ 15). By that point, COBA was Platinum's largest investor for all of 2014, and amounted to more than half of all incoming investments for the fund, while at the same time the fund was experiencing substantial redemptions from other investors. (PSR ¶ 13). In approximately 2016, Platinum filed for bankruptcy and COBA lost $19 million of its $20 million investment. (Tr. 177-79).

7

The Government's proof at trial included (i) testimony from 10 witnesses, including Rechnitz, the cooperating witness who had negotiated the kickback arrangement between Seabrook and Huberfeld and delivered the $60,000 cash bribe to Seabrook; (ii) emails and other documents that, among other things, reflected COBA's attorneys' concerns—which Seabrook concealed from the COBA board—about the Platinum investment; (iii) corroborating physical evidence, including photographs, surveillance video of Rechnitz on the day he delivered the $60,000 bribe to Seabrook, and the Ferragamo bag itself, which had been seized from Seabrook's home, along with tens of thousands of dollars in cash; (iv) recorded phone conversations in January 2015—a month after Seabrook collected the $60,000 bribe—in which Huberfeld discussed getting more money from COBA; and (v) an affidavit Seabrook had submitted in a state court proceeding in which he lied about his connections to Rechnitz and falsely claimed that COBA's board had authorized the $5 million transfer of union funds to Platinum.

Seabrook presented his case through cross-examination of the Government's witnesses. (*See, e.g.*, Tr. 1186-91).

The jury found Seabrook guilty on Counts One and Two of the Superseding Indictment on August 15, 2018.

## 2. Seabrook's Sentencing and Direct Appeal

Prior to sentencing, the Probation Office issued the Presentence Report, which calculated an advisory range under the United States Sentencing Guidelines

("U.S.S.G." or the "Guidelines") of 51 to 63 months' imprisonment, based on a total offense level of 24 and Criminal History Category I. (PSR ¶ 72). The offense level calculation included a base offense level of 8 under U.S.S.G. §§ 2B1.1(c)(3) and 2B4.1(a); a fourteen-point enhancement because the value of the benefit conferred was more than $550,000 but less than $1,500,000, under U.S.S.G. §§ 2B4.1(b)(1)(B) and 2B1.1(b)(1)(H)[2]; and a two-level enhancement because as President of COBA, Seabrook abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense, under U.S.S.G. § 3B1.3. (PSR ¶¶ 25-33). Neither party disputed the Probation Office's calculation of the advisory Guidelines range. (A. 4).

On February 8, 2019, Judge Hellerstein sentenced Seabrook to a within-Guidelines sentence of 58 months' imprisonment, to be followed by three years' supervised release, and imposed a $200 mandatory special assessment and $19 million in restitution to COBA, which was ordered to be joint and several with Huberfeld and Rechnitz.

_____

[2] It was undisputed that Platinum made approximately $1.2 million in fees on the COBA investment, which was the benefit conferred for purposes of U.S.S.G. §§ 2B4.1(b)(1)(B) and 2B1.1(b)(1)(H); *see also* U.S.S.G. § 2B4.1 cmt. n.2 (explaining that the "value of the improper benefit conferred" refers to the value of the action to be taken or effected in return for the bribe").

9

In deciding the appropriate sentence, Judge Heller-
stein explained that he considered the sentencing fac-
tors under 18 U.S.C. § 3553(a). (A. 42-43). On the one
hand, the District Court considered Seabrook's miti-
gating arguments, including the good he had done for
other people in his life and his rise from "very poor cir-
cumstances." (A. 43). On the other hand, Judge Heller-
stein noted that the sentence imposed must "reflect
the seriousness of the offense." (A. 44). The District
Court emphasized that: "Taking a bribe to perform an
act that otherwise would not likely be performed is a
serious crime," and "as the sentencing guidelines point
out, where there has been an abuse of trust, it becomes
about an even more serious crime." (A. 44-45). The Dis-
trict Court elaborated:

> The nature of this crime was to pay Mr.
> Seabrook a bribe to place a huge chunk of
> union funds coming to $19 million in a
> risky hedge fund investment that made
> its money by so-called leveraged lending,
> which by its nature means you're lending
> on assets that are not liquid and that may
> never receive their hopeful value, in
> which case loans would be unable to be
> paid. And since hedge funds work on lev-
> erage, it's likely that the hedge fund, if it
> suffers reverses, they lose everything.
>
> And Mr. Seabrook, if he read it, would
> know it. His lawyers wanted it out. They
> pointed out the risk, they pointed out
> that it was impossible for the union nego-
> tiators to eliminate this statement of the

10

> fund that any investor must consider the possibility of losing his entire investment.
>
> And so, Mr. Seabrook committed a serious offense, entrusting not only $14 million of money that was to be kept and preserved for the benefit of pensions and welfare payments, but also $5 million of an operating fund that was necessary to pay bills.

(A. 45). The District Court further observed: "Mr. Seabrook I believe was blinded by his own sense of his own importance, and his desire to benefit himself, after benefiting others for so long." (A. 45). Judge Hellerstein also noted the need to impose a sentence that "afford[s] adequate deterrence to criminal conduct," as "[t]here are lots of people in positions of trust . . . And when they're caught doing crime, they need to be punished, because others need to know that if they're caught, they'll be punished." (A. 46).

Weighing the competing sentencing considerations, Judge Hellerstein stated that he wanted the "punishment to reflect that Mr. Seabrook had been a force of good in life," but "to be serious to comply with the purposes" of sentencing. (A. 46). After explaining the relevant sentencing considerations, Judge Hellerstein concluded that the "just" punishment was 58 months' imprisonment. (A. 47).

Seabrook's conviction was affirmed on direct appeal. Among other things, this Court rejected by summary order Seabrook's argument that Rechnitz had

11

testified falsely at trial. *See Seabrook*, 814 F. App'x at 661.

### 3. Huberfeld's Conviction, Sentencing, and Appeal

Prior to Seabrook's retrial, on May 25, 2018, Huberfeld pleaded guilty, pursuant to a written plea agreement with the Government, to Superseding Information S2 16 Cr. 467 (AKH), which charged Huberfeld with conspiring to commit wire fraud, in violation of 18 U.S.C. § 371. Huberfeld's plea agreement contained a stipulation between the parties that Huberfeld's advisory Guidelines range was 6 to 12 months' imprisonment. (A. 80). Huberfeld accepted responsibility for having conspired to defraud Platinum of the $60,000 it paid to reimburse Rechnitz for the bribe to Seabrook, which Huberfeld told Rechnitz to falsely invoice to Platinum as reimbursement for Knicks tickets. (A. 28; PSR ¶ 14). Prior to his sentencing, and with his restitution obligation still the subject of active litigation before Judge Hellerstein, Huberfeld reached an agreement with COBA pursuant to which he voluntarily paid COBA $7 million. (A. 119, 129).

On February 12, 2019, a few days after Seabrook's original sentencing, Huberfeld appeared before Judge Hellerstein for sentencing. Despite the parties' stipulation to an advisory Guidelines range of 6 to 12 months' imprisonment based on the applicable fraud guideline, the District Court calculated an advisory Guidelines range of 30 to 37 months' imprisonment. In doing so, the District Court relied on the commercial bribery guideline, even though Huberfeld had not

12

pleaded guilty to a bribery offense. *See Seabrook*, 968 F.3d at 230-31. Judge Hellerstein sentenced Huberfeld to a term of 30 months' imprisonment—above the stipulated Guidelines range, but within Judge Hellerstein's calculated Guidelines range—to be followed by three years' supervised release, and imposed a $100 mandatory special assessment and $19 million in restitution to COBA. *Id.* at 231; (Dkt. 296).

Huberfeld appealed his sentence. On August 4, 2020, this Court held that Judge Hellerstein had erred by imposing a restitution order against Huberfeld as if he had been convicted of the bribery scheme. *See Seabrook*, 968 F.3d at 236. This Court also concluded that Judge Hellerstein had procedurally erred by applying the Guideline for commercial bribery (30 to 37 months' imprisonment), rather than for fraud (6 to 12 months' imprisonment). *See id.* at 232-35. As a result, this Court vacated Huberfeld's sentence, reversed the restitution order entered against Huberfeld, and remanded for resentencing. *See id.* at 227.

On December 1, 2020, Huberfeld's case was reassigned to the Honorable Lewis J. Liman, United States District Judge. Huberfeld appeared before Judge Liman for resentencing on June 22, 2021. Consistent with this Court's decision, Judge Liman calculated an advisory Guidelines range of 6 to 12 months' imprisonment. (A. 113-14). Judge Liman sentenced Huberfeld to a within-Guidelines term of seven months' imprisonment, to be followed by one year of supervised release, and imposed a $100 mandatory special assessment, $60,000 in restitution to Platinum, and $4,000 in forfeiture. (A. 153-54).

13

### 4. Rechnitz's Conviction, Sentencing, and Appeal

Rechnitz began cooperating with the Government in May 2016. On June 8, 2016, Rechnitz pleaded guilty, pursuant to a cooperation agreement, to an information, which charged him with conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349. (16 Cr. 389, Dkt. 10). Under the cooperation agreement, the Government agreed to file a motion under Section 5K1.1 of the Guidelines in advance of Rechnitz's sentencing if it determined that Rechnitz provided substantial assistance in an investigation or prosecution and complied with all of his obligations under the agreement. (GX 1601 at 3). The cooperation agreement also provided that Rechnitz, among other things, "shall make restitution in an amount to be specified by the Court in accordance with 18 U.S.C. §§ 3663, 3663A, and 3664." (GX 1601 at 1).

Pursuant to his cooperation agreement, Rechnitz testified at Seabrook's original trial and his retrial. (A. 120; Tr. 560-61).

On December 19, 2019, after Seabrook's original sentencing, Judge Hellerstein sentenced Rechnitz to a term of five months' imprisonment, to be followed by three years of supervised release, the first five months of which would be served under home incarceration. (16 Cr. 389, Dkt. 84 at 2-3). Judge Hellerstein also imposed a $100 mandatory special assessment and $19 million in restitution to COBA, but capped Rechnitz's restitution liability at $10 million. (16 Cr. 389, Dkt. 84 at 5-6). Rechnitz appealed his sentence. On November 9, 2021, after a remand from this Court under 18

14

U.S.C. § 3771 (16 Cr. 389, Dkt. 104), Judge Hellerstein granted COBA's motion for additional restitution and increased Rechnitz's joint-and-several restitution to $12.01 million, representing the full amount of COBA's remaining loss. (16 Cr. 389, Dkt. 156 at 2).

Rechnitz appealed the November 9, 2021 restitution ruling. (*See* 16 Cr. 389, Dkt. 157). Rechnitz challenged Judge Hellerstein's denial of his motion for reassignment and the District Court's calculation of restitution. *See United States v. Rechnitz*, No. 20-1011, Dkt. 89. On July 26, 2023, this Court held that recusal was required based on Judge Hellerstein's "close," "advisory" relationship with a trial witness, whose financial interests were "plausibly adverse" to Rechnitz's with respect to restitution. *United States v. Rechnitz*, 75 F.4th 131, 144 (2d Cir. 2023). This Court remanded the case for reassignment to a different district judge and for plenary resentencing. *Id.* at 135.

On July 28, 2023, Rechnitz's case was reassigned to the Honorable Katherine Polk Failla, United States District Judge. On October 16, 2024, Judge Failla found that the Government had not proven by a preponderance of the evidence that Rechnitz was a proximate cause of COBA's remaining losses and ordered restitution in the amount of $891,000, to be paid in two weeks. (*See* 16 Cr. 389, Dkt. 238). On October 31, 2024, Judge Failla adjourned sentencing to February 12, 2025. (*See* 16 Cr. 389, Dkt. 241).

Rechnitz is still awaiting resentencing.

15

### 5. Seabrook's Section 2255 Petition and Rule 33 Motion

On October 27, 2021, Seabrook moved in the District Court to vacate his convictions and sentence under Section 2255 and for a new trial under Rule 33. (21 Civ. 8767 (AKH), Dkt. 1 at 3-69). Among other things, Seabrook argued that he had received a disproportionately harsher sentence than co-conspirators Huberfeld and Rechnitz. (21 Civ. 8767 (AKH), Dkt. 1 at 37-68). The District Court denied Seabrook's motions in all respects. (Dkt. 436; Dkt. 450). The District Court concluded that the difference in the sentences imposed did not entitle Seabrook to habeas relief, but asserted that it "would constitute [an] adequate basis for a compassionate reduction of his sentence." (Dkt. 450 at 4-6). Seabrook appealed and this Court affirmed his judgment of conviction on November 13, 2023. *See Seabrook v. United States*, No. 22-841, 2023 WL 7489961, at *2 (2d Cir. Nov. 13, 2022).

### 6. Seabrook's Motion To Reduce His Sentence

On October 31, 2022, Seabrook filed a motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. 451-1). Seabrook principally contended that he should be released (i) in light of his age and medical conditions, and the risk of contracting COVID-19; (ii) because he did not "reasonably foresee" that COBA would suffer a loss of its invested funds and therefore did not proximately cause the loss; and (iii) pursuant to 18 U.S.C. § 3553(a)(6), which directs a district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar

16

records who have been found guilty of similar conduct" when imposing sentence. (Dkt. 451-1 at 4-6). Seabrook argued that a sentence reduction was warranted because of the difference between his sentence, the new sentence ultimately received by Huberfeld after remand by this Court, and the sentence imposed on Rechnitz, who cooperated with the Government and testified against Seabrook at his trials. (Dkt. 451-1 at 6).

The Government opposed Seabrook's motion for a reduction in sentence, arguing, among other things, that he had failed to establish any "extraordinary and compelling reasons" justifying such a reduction as required by 18 U.S.C. § 3582(c)(1)(A). (Dkt. 454). In particular, the Government argued that any alleged disparity between Seabrook's sentence and his co-conspirators' sentences was not a cognizable basis for relief and did not constitute an "extraordinary" or "compelling" reason for a sentence reduction. (Dkt. 454 at 15-24) (citing *e.g.*, *United States v. Roney*, 833 F. App'x 850, 854 (2d Cir. 2020) ("[A] compassionate-release motion is not an opportunity to second guess or to reconsider the sentencing court's original decision")). The Government further emphasized that Seabrook and his co-conspirators were not similarly situated and there was therefore no unwarranted disparity. (Dkt. 454 at 25-28).

On February 23, 2023, the District Court granted the motion and reduced Seabrook's sentence to time served. (A. 99-105). Judge Hellerstein rejected Seabrook's arguments related to the possibility of contracting COVID-19 and about proximately causing

17

COBA's loss. (A. 104). But Judge Hellerstein asserted that the "enactment of the First Step Act enables me to consider an unreasonable disparity in sentences between co-conspirators as part of the extraordinary and compelling circumstances that justify lowering Seabrook's sentence," and he agreed with Seabrook that "he received a sentence that is so disproportionate to the sentences his co-conspirators, particularly Huberfeld, received, that the disparity between his and his co-conspirators' sentences is an extraordinary and compelling circumstance justifying his release." (A. 104-05). Judge Hellerstein stated that "[n]ow that Huberfeld's sentence has been reduced to 13 months, it would be unjust for Seabrook to face 58 months in custody." (A. 105).[3]

Judge Hellerstein concluded that "a sentence of time served, recognizing the approximately 21 months Seabrook has served, would reduce the disparity between Seabrook and his co-conspirators and would be sufficient, but not greater than necessary to achieve the sentencing objectives set forth in 18 U.S.C. § 3553(a), including the need to avoid unwarranted sentencing disparities [under] 18 U.S.C. 3553(a)(6)." (A. 105). Judge Hellerstein further explained that the "adjusted sentence reflects the seriousness of Seabrook's crime and lack of timely acceptance of responsibility, while also remedying what would otherwise be an unjust sentencing disparity between Seabrook and his co-Defendants." (A. 105).

---

[3] Huberfeld was in fact resentenced by Judge Liman to 7, not 13, months' imprisonment.

18

## Summary of Argument

A jury found Seabrook guilty for his participation in a scheme to steer $20 million of COBA's money into investments with Platinum because Seabrook felt that it was time he "got paid." (Tr. 637). Seabrook "got paid" from his corrupt bargain, receiving $60,000 in cash in a luxury Ferragamo handbag. And COBA ultimately lost $19 million of its investment after Seabrook concealed from COBA's board the concerns of COBA's attorneys about the investment and Platinum filed for bankruptcy. The District Court sentenced Seabrook to 58 months' imprisonment, recognizing the seriousness of Seabrook's crimes and his abuse of his position of trust. But then the District Court reduced Seabrook's sentence to time served because it concluded that Seabrook's original sentence was "so disproportionate" as compared to the sentences of his co-conspirators.

The District Court's reduction of Seabrook's sentence should be reversed under this Court's recent decision in *United States v. Fernandez*, 104 F.4th 420 (2d Cir. 2024), which considered this very issue and held that a sentencing disparity between a defendant who went to trial and his co-defendants who pleaded guilty and cooperated was not an extraordinary or compelling reason for compassionate release. As in *Fernandez*, substantial dissimilarities between Seabrook and his co-defendants justified their different sentences, and rendered Judge Hellerstein's conclusion that any disparity was an "extraordinary and compelling reason" for release under 18 U.S.C. § 3582(c)(1)(A), an abuse of his discretion. Far from being extraordinary or compelling, it is commonplace for a defendant, like

19

Seabrook, who was convicted at trial to receive a longer sentence than his co-defendants who were less culpable, cooperated with the Government, and accepted responsibility for their crimes.

## A R G U M E N T

### The District Court Abused Its Discretion by Granting Seabrook's Motion for a Sentence Reduction

### A.  Applicable Law

#### 1.  18 U.S.C. § 3582(c)(1)(A) Generally

" 'A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). One such circumstance, commonly referred to as the "compassionate release" provision, allows a court to "reduce [a] term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A).

This Court reviews a district court's ruling on a Section 3582(c)(1)(A) motion for abuse of discretion, which incorporates de novo review with respect to questions of statutory interpretation. *United States v. Halvon*, 26 F.4th 566, 569 (2d Cir. 2022). A district court abuses its discretion when its ruling "cannot be

20

located within the range of permissible decisions" or is based on "an erroneous view of the law" or "a clearly erroneous assessment of the evidence." *Id.* A "district court's interpretation of the scope of § 3582(c)(1)(A) is . . . a question of statutory interpretation subject to *de novo* review." *Fernandez*, 104 F.4th at 426.

### 2. "Extraordinary and Compelling Reasons" Under Section 3582(c)(1)(A)

In *Fernandez*, this Court elaborated on the meaning of "extraordinary and compelling reasons" for a sentence reduction under Section 3582(c)(1)(A). An "extraordinary" reason is one that is "most unusual, far from common, . . . and has little or no precedent . . . beyond or out of the common order, remarkable, and synonymous with singular." *Fernandez*, 104 F.4th at 428. A "compelling" reason is one that is both "powerful and convincing." *Id.*

After defining "extraordinary and compelling reasons" under Section 3582(c)(1)(A), this Court held that "[i]t is not 'extraordinary' (indeed, it should be expected) that a defendant who proceeds to trial and is convicted receives a longer sentence than his co-defendants who plead guilty to different crimes, accept responsibility, and assist the government by cooperating." *Id.* Similarly, such a disparity is not "compelling"; "[d]isparities between the sentences of coconspirators can exist for valid reasons, such as . . . the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." *Id.* In particular, "a reasonable explanation for a sentencing disparity [is] readily apparent where there [are] varying

21

degrees of culpability and cooperation between the various defendants." *Id.*

## B. Discussion

The District Court abused its discretion by granting a sentence reduction based on sentencing disparities between Seabrook and his co-defendants, who—unlike Seabrook—accepted responsibility, assisted the Government, and had lesser culpability.

The legal error here is the same as that in *Fernandez* and likewise requires reversal. Fernandez was convicted at trial for his role as a "backup shooter" in a scheme to murder two drug dealers who were trying to collect on a drug debt. 104 F.4th at 423. Fernandez initially received a longer sentence than four co-defendants involved in the scheme, all of whom pleaded guilty and three of whom cooperated with the Government. *Id.* at 424 & n.1; *United States v. Fernandez*, No. 22-3122, Brief for the United States of America, 2023 WL 2756176, at *16 n.3. But Judge Hellerstein subsequently granted Fernandez compassionate release and reduced his life sentence to time served (11 years' imprisonment) based, in part, on the disparity between Fernandez's sentence and the sentences of his co-defendants. *Fernandez*, 104 F.4th at 426; *United States v. Fernandez*, No. 22-3122, Brief for the United States of America, 2023 WL 2756176, at *19. This Court reversed.

After defining "extraordinary" and "compelling" under Section 3582(c)(1)(A), *Fernandez* concluded that "[u]nder the circumstances of this case, Fernandez's sentencing disparity is not an 'extraordinary and

22

compelling reason' to reduce his sentence under the plain meaning of the statute." *Fernandez*, 104 F.4th at 428. The dispositive circumstances of that case are like those here. Unlike his co-defendants, Fernandez had not pleaded guilty or cooperated, but instead proceeded to trial. Far from being uncommon, unprecedented, or singular that Fernandez received a longer sentence than those co-defendants who pleaded guilty, such a result was ordinary. This Court explained: "[i]t is not 'extraordinary' (indeed, it should be expected) that a defendant who proceeds to trial and is convicted receives a longer sentence than his co-defendants who plead guilty to different crimes, accept responsibility, and assist the government by cooperating." *Id. Fernandez* highlighted the Supreme Court's observation that the "system of pleas . . . often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial." *Id.* Furthermore, "lower sentences for cooperating defendants are explicitly contemplated by the sentencing statute, and the Sentencing Guidelines," which makes such practices "hardly most unusual, far from common, or with little or no precedent." *Id.*

Similarly, any sentencing disparity was not a "compelling" reason to reduce Fernandez's sentence. *Id.* Instead, "[d]isparities between the sentences of coconspirators can exist for valid reasons, such as . . . the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." *Id.* The Court noted its prior recognition that "a reasonable explanation for a sentencing disparity was readily apparent where there were varying degrees of

23

culpability and cooperation between the various defendants." *Id.*

To be sure, *Fernandez* did not "foreclose the possibility that significant sentence disparities . . . might, in some unusual circumstances, warrant a finding of 'extraordinary and compelling' reasons to grant a sentence reduction." 104 F.4th at 429 n.4. But as in *Fernandez*, "[t]he case at bar simply does not involve any such circumstances." *Id.* Instead, the circumstances here resemble those in *Fernandez* in all material respects. Like Fernandez, Seabrook was the only co-defendant who did not accept responsibility for his crimes, proceeding to trial twice. Like three of Fernandez's co-defendants, Rechnitz was not similarly situated to the trial defendant here (Seabrook) because he cooperated with the Government and was sentenced pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. *Fernandez*, 104 F.4th at 428 ("lower sentences for co-operating defendants are explicitly contemplated by the sentencing statute, and the Sentencing Guidelines"). The disparity between Seabrook's sentence and Rechnitz's original sentence of five months' imprisonment imposed by Judge Hellerstein was justified by Rechnitz's cooperation, as any forthcoming disparity at Rechnitz's upcoming resentencing would be. Rechnitz's cooperation is a "readily apparent" and "valid reason[ ]" for a sentence disparity, and as *Fernandez* recognized, his lower sentence is not "most unusual" or "far from common." *Fernandez*, 104 F.4th at 428; *see also United States v. Amato*, 48 F.4th 61, 66 (2d Cir. 2024) (district court properly rejected argument that sentencing disparity with defendants who cooperated warranted compassionate release).

24

Similarly, there is nothing "singular" about Huberfeld receiving a different sentence, where like Fernandez's fourth co-defendant, he "plead[ed] guilty to different crimes [and] accept[ed] responsibility." *Fernandez*, 104 F.4th at 428. Unlike Seabrook, Huberfeld was not convicted of a bribery offense, but pleaded guilty to conspiring to commit wire fraud, in violation of 18 U.S.C. § 371. Huberfeld accepted responsibility for his criminal conduct and acknowledged that he submitted a fraudulent invoice to Platinum to paper over a kickback paid to Seabrook. He also voluntarily agreed to pay $7 million to COBA, which restored a substantial amount of the union members' losses. Seabrook, on the other hand, was found guilty at retrial, never accepted responsibility for his conduct—which included abusing a position of trust because he felt it was "time [he] got paid," concealing COBA's attorneys' concerns about the investment, lying in a sworn affidavit, and betraying thousands of correction officers—and failed to exhibit remorse. Both Huberfeld's counsel and the Government, as well as Judges Hellerstein and Liman, were all in agreement that Huberfeld deserved a lesser sentence than Seabrook based on their varying levels of culpability. (*See* Dkt. 287 at 5 (the Government recommending before Judge Hellerstein a twelve-month sentence for Huberfeld); A. 119 (the Government again recommending a twelve-month sentence before Judge Liman and explaining that Huberfeld "differ[s] from Seabrook in some significant ways," including that "he pled guilty and accepted responsibility," "publicly acknowledged" his misconduct, was "not convicted of a bribery offense, unlike Norman Seabrook," and "voluntarily agreed to pay COBA $7 million in restitution").

25

In short, as in *Fernandez*, the result here was the opposite of the remarkable or powerful circumstances necessary to justify a sentence reduction under Section 3582(c)(1)(A).

If anything, the disparities here were even more "expected" than in Fernandez, *Fernandez*, 104 F.4th at 428, given Seabrook's greater culpability than his co-defendants. Among Fernandez's co-defendants who received lesser sentences was Jeffrey Minaya, the leader of a drug ring who hatched the murder plot and paid to have it carried out, and Patrick Darge, who testified at Fernandez's trial about recruiting and paying Fernandez to back him up as the shooter for the murder, and who killed the first victim. *Id.* at 423-24; *United States v. Fernandez*, No. 22-3122, Brief for the United States of America, 2023 WL 2756176, at *5-*10. Here, Seabrook's advisory Guidelines range dwarfed that of Huberfeld, reflecting his greater culpability. In Huberfeld's plea agreement, the parties stipulated to an advisory Guidelines range of 6 to 12 months' imprisonment. (A. 108, 144). Seabrook's advisory Guidelines range, on the other hand, was 51 to 63 months' imprisonment. (PSR ¶ 72). In addition to being convicted of two charges in the Superseding Indictment without accepting responsibility, Seabrook was the only defendant who abused a position of trust. He was supposed to act as a fiduciary for the members of his union and instead used that position to enrich himself and put the union members' money at risk. (Dkt. 289 at 11-12). *Fernandez* noted it was commonplace even for those "who are *less* morally culpable but take a chance and go to trial" to receive a longer sentence than a more culpable co-defendant who pleads guilty. *Fernandez*,

26

104 F.4th at 428 (emphasis added). All the more so here, where Seabrook was the *most* culpable *and* failed to take responsibility, he was deserving of the lengthiest sentence.

The fact that Judge Liman resentenced Huberfeld to an incrementally lower within-Guidelines sentence does not change the analysis. Judge Hellerstein deemed it "unjust for Seabrook to face 58 months in custody" while Huberfeld received only 7 months' imprisonment. (A. 105). But even Judge Hellerstein recognized that Seabrook and Huberfeld were not similarly situated, and that Seabrook was far more culpable, by initially sentencing Huberfeld to a term of 30 months' imprisonment, 28 months below Seabrook. *See Fernandez*, 104 F.4th at 429 n.4 (noting that Judge Hellerstein "implicitly acknowledged the legitimacy of the disparity between Fernandez's life sentence and his co-defendants' lower sentences"). By sentencing Huberfeld to a within-Guidelines sentence of 7 months' imprisonment, Judge Liman did not differ from Judge Hellerstein in kind, but only in degree. Judge Liman's lower sentence was particularly justified because this Court had determined that Judge Hellerstein erroneously calculated Huberfeld's Guidelines range, incorrectly inflating it by approximately 25 months, *see Seabrook*, 968 F.3d at 232-35, or roughly the difference between Judge Liman's and Judge Hellerstein's proposed sentences. Given that the Guidelines "should be the starting point and the initial benchmark" of a defendant's sentence, *Gall v. United States*, 552 U.S. 38, 49 (2007), that both Judges Hellerstein and Liman sentenced Huberfeld to sentences within their Guidelines calculation, and that Judge

27

Liman's Guidelines calculation was the correct one, Huberfeld's sentence of 7 months' imprisonment was hardly "unjust." (A. 105). Judge Liman specifically noted, correctly, that Huberfeld's substantially lower Guidelines range relative to Seabrook (within which he sentenced Huberfeld)—actually "help[ed] avoid unwarranted disparities" (A. 144)—rather than create one so severe as to constitute an "extraordinary and compelling reason" for Seabrook's subsequent compassionate release.

Even as measured against Judge Hellerstein's original sentence for Huberfeld and its rationale, the sentence imposed by Judge Liman was well within the broad range of sentencing discretion afforded to a sentencing judge, and therefore fell well short of an extraordinary or compelling circumstance under Section 3582(c)(1)(A), as defined in *Fernandez. See United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008) (en banc) (recognizing the "range of permissible decisions" available to a sentencing court). Simply because Huberfeld's ultimate sentence resulted in a disparity different from what Judge Hellerstein had originally calibrated did not render that disparity extraordinary or compelling, but instead had a "readily apparent" and "reasonable explanation" based on the "varying degrees of culpability and cooperation between the various defendants." *Fernandez*, 104 F.4th at 428.

Judge Hellerstein further erred by reasoning that a sentence reduction was warranted to avoid "unwarranted sentencing disparities [under] 18 U.S.C. 3553(a)(6)." (A. 105). Section 3553(a)(6) directs district courts to consider at sentencing "the need to avoid

28

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." While "[S]ection 3553(a)(6) requires a district court to consider nationwide sentence disparities," it "does not require a district court to consider disparities between co-defendants." *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008). Moreover, because the statute focuses on unwarranted disparities between similar defendants, "disparity between *non-similarly situated* co-defendants is not a valid basis for a claim of error under 18 U.S.C. § 3553(a)(6)." *United States v. Fernandez*, 443 F.3d 19, 32 (2d Cir. 2006), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338 (2007). In other words, "sentencing disparities among co-defendants are not 'unwarranted' under Section 3553(a)(6) where the defendants are not 'similarly situated.'" *United States v. Esso*, 486 F. App'x 200, 202 (2d Cir. 2012); *United States v. Riggi*, 410 F. App'x 388, 392 (2d Cir. 2011) ("[T]he disparity was not unwarranted, because the co-defendants were not similarly situated to Riggi.").

In similar circumstances when evaluating the reasonableness of a sentence on direct appeal, this Court has repeatedly found that defendants who failed to accept responsibility were not similarly situated to co-defendants who did so. *See United States v. Alcius*, 952 F.3d 83, 88-89 (2d Cir. 2020) (finding that the sentence imposed by the district court was permissible where one defendant pled guilty to one count of use of interstate commerce to promote unlawful activity, and another defendant went to trial and was convicted of five counts); *United States v. Kanagbou*, 726 F. App'x 21, 25 (2d Cir. 2018) (stating that co-defendants were "not

29

similarly situated" as one "chose to proceed to trial" and the other "elected to plead guilty"); *United States v. Felder*, 722 F. App'x 62, 63 (2d Cir. 2018) (holding defendant "was not similarly situated to the co-defendants to whom he compares himself because they pleaded guilty, unlike [the defendant]," *inter alia*); *United States v. Doria*, 753 F. App'x 1, 3 (2d Cir. 2018) (sentencing disparity appropriate because, *inter alia*, the defendant "pleaded guilty to different offenses . . . than his proposed comparators"); *United States v. Willis*, 476 F.3d 103, 109 (2d Cir. 2007), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007); *Fernandez*, 443 F.3d at 32; *United States v. Florez*, 447 F.3d 145, 158 (2d Cir. 2006) (defendants not similarly situated where one pleaded guilty and accepted responsibility and another proceeded to trial and insisted on innocence); *United States v. Ebbers*, 458 F.3d 110, 129 (2d Cir. 2006) ("[A] reasonable explanation of the different sentences here is readily apparent, namely, the varying degrees of culpability and cooperation between the various defendants. All of those named above cooperated and pled guilty. Ebbers did not."); *United States v. Cabot*, 755 F. App'x 75, 81 (2d Cir. 2018) (rejecting defendant's disparity argument because, *inter alia*, "[defendant] and Kroll were not similarly situated, as Kroll pled guilty and cooperated with the government"); *United States v. Fiumano*, 721 F. App'x 45, 51 (2d Cir. 2018) ("Much less can Fiumano complain of disparity with his co-defendants . . . whose guilty pleas and cooperation with the government make them not similarly situated to Fiumano[.]"); *United States v. Cain*, 487 F.3d 1108,

30

1114-15 (8th Cir. 2007) (292 month to 24 month sentencing disparity justified by cooperation).

That the sentencing disparity here would readily be deemed substantively reasonable if raised on direct appeal further demonstrates that the disparity was not "beyond or out of the common order" or a "powerful and convincing" reason for a sentence reduction after Seabrook's conviction became final. *Fernandez*, 104 F.4th at 427-28.

Moreover, it is not only commonplace, but inevitable, that some defendants in a multidefendant case will be sentenced before others, and therefore without the benefit of complete information about the sentences of all co-defendants, some of whom may be sentenced by a different judge. A sentencing judge is not required to consider sentencing disparities with co-defendants that *are* known at the time of sentencing, *see Frias*, 521 F.3d at 236—all the more so the subsequent sentence of a co-defendant, even one imposed by another judge, is not a basis to revisit the finality of a sentence. *See Dillon*, 560 U.S. at 824 (A final judgment "may not be modified by a district court except in limited circumstances.")*. Permitting Judge Hellerstein to dramatically revise Seabrook's sentence based on a relatively modest disagreement with Judge Liman's weighing of the Section 3553(a) factors for Huberfeld would grossly undermine the deference this Court affords to a district court's sentencing judgment. *See, e.g.*, *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012) ("The particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge.").

31

Judge Liman sentenced Huberfeld based on the totality of information before him, including the sentence imposed on Seabrook. Just as this Court will not second-guess a reasonable sentencing decision, neither should Judge Hellerstein be permitted to do so indirectly using Section 3582(c)(1)(A) after the previous sentence he imposed on Huberfeld was reversed.

For all these reasons, Judge Hellerstein abused his discretion in determining that Seabrook had established an "extraordinary and compelling reason" for his release, and the District Court's order should be reversed.

## CONCLUSION

**The District Court's order granting Seabrook's Section 3582(c)(1)(A) motion should be reversed.**

Dated:     New York, New York
           December 26, 2024

                        Respectfully submitted,

                        EDWARD Y. KIM,
                        *Acting United States Attorney for the*
                        *Southern District of New York,*
                        *Attorney for the United States*
                            *of America.*

LARA POMERANTZ,
DANIELLE R. SASSOON,
    *Assistant United States Attorneys,*
        *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 7,137 words in this brief.

EDWARD Y. KIM,
*Acting United States Attorney for the*
*Southern District of New York*

By: DANIELLE R. SASSOON,
*Assistant United States Attorney*