# 23-6279

United States Court of Appeals
for the Second Circuit



UNITED STATES OF AMERICA,

*Appellant,*

v.

MURRAY HUBERFELD,

*Defendant,*

NORMAN SEABROOK,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

Roger B. Adler, P.C.
*Attorneys for Defendant-Appellee*
233 Broadway, Suite 2340
New York, New York 10270
(212) 406-0181
rbalaw@verizon.net



# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

JURISDICTIONAL STATEMENT ........................................................................1

QUESTIONS PRESENTED....................................................................................2

STATEMENT OF FACTS ......................................................................................2

ARGUMENT: THE DISTRICT COURT DID NOT
ABUSE ITS DISCRETION IN ORDERING THE
RELEASE OF A NON-VIOLENT FIRST OFFENDER
WITH DOCUMENTED MEDICAL ISSUES AFTER
SERVING ALMOST TWO YEARS IN PRISON TO
HOME CONFINEMENT. THE SENTENCE WAS
NOT REDUCED ......................................................................................................7

CONCLUSION: THE ORDER APPEALED FROM
SHOULD BE AFFIRMED. ANY CONTEMPLATED
CORRECTIVE ACTION IS MOOT ......................................................................13

CERTIFICATE OF COMPLIANCE......................................................................14

# TABLE OF AUTHORITIES

Page(s)

## United States Supreme Court

*Berger v. United States*, 295 U.S. 78 [1935] ............................................................11

*Chavez-Meza v. United States*, __ U.S. __,
138 S. Ct. 1959, 1961 [2018] ......................................................................................8

*Concepcion v. United States*, 597 U.S. __,
142 S. Ct. 2389-2400 [2022] ......................................................................................8

## United States Court of Appeals

*United States v. Brooker*, 976 F. 3d 228 [2nd Cir. 2020] ........................................5, 7

*United States v. Fernandez*, 104 F. 4th 420 [2nd Cir. 2024] ......................................8

*United States v. Halvon*, 26 F. 4th 566 [2nd Cir. 2022] ..............................................8

*United States v. Keitt,* 21 F. 4th 67 [2nd Cir. 2021] ....................................................9

*United States v. Key*, 602 F. 3d 492, 495 [2nd Cir. 2010] .........................................12

*United States v. Mazza-Alayf*, 621 F. 3d 205 [2nd Cir. 2013] ..................................12

*United States v. Rechnitz*, 75 F. 4th 131, 144 [2nd Cir. 2023] ....................................4

*United States v. Shaw*, 354 Fed. Appdx. 439 [2nd Cir. 2009] ..................................12

*United States v. Zullo*, 976 F. 3d 228, 237 [2nd Cir. 2020] ....................................5, 7

## United States District Court

*United States v. Arejelo*, __ F. Supp. 3d __ [E.D.N.Y. 12/13/24] .............................6

*United States v. Tagliaferro*, __ F. Supp. 3d __ [S.D.N.Y. 2024] .............................6

ii

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
------------------------------------------------------------X

UNITED STATES OF AMERICA,

                   *Appellant,*

   - *v* -                                      DOCK # 23-6279

NORMAN SEABROOK,

                   *Appellee.*
------------------------------------------------------------X

## **JURISDICTIONAL STATEMENT**

      The Government appeals to an order of the United States District Court, Southern District of New York (Hellerstein, J.) entered on February 24, 2023, which granted Defendant Norman Seabrook's motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A).

      Pursuant to the aforesaid order, Defendant has been confined to home confinement under the supervision of the Probation Department. He has not been charged, nor adjudicated in violation of any of the terms of his release, and has resided continuously with his family in Bronx County. The duration of his sentence has not been reduced.

## QUESTIONS PRESENTED

Whether Defendant Seabrook's compassionate release, and transfer to home confinement under the "First Step Act," constituted abuse of *nisi prius* discretion, mindful that Defendant had no prior criminal history points, suffered from documented health issues, and was a first offender convicted of a non-violent crime, and received a far harsher sentence than his co-defendants?

## STATEMENT OF FACTS

On February 8th, 2019, Appellee appeared before Senior Judge Alvin K. Hellerstein for sentencing following his conviction following trial under 16-cr-467(AKH) of allegedly accepting a $60,000 payment from Jonah Rechnitz. Although the Government has referenced the alleged payment as a "bribe," Appellee views it as a "placement fee" commonly paid to those who refer clients to hedge funds, mutual funds, and annuities.

The Court viewed the applicable base offense level as 8, and imposed a 14 level "upward adjustment," perceiving the "improper benefit" to be greater than $550,000, but less than $1.5 million (A-3), notwithstanding the sole payment of $60,000 was substantially less. The Court noted that Appellee had no criminal history points*, and at a guideline offense level of 24 faced a guidelines range of between 51 and 63 months.

---

* Appellee is eligible for a retroactive sentencing.

2

The Court imposed a sentence of 58 months imprisonment, and ordered Appellee to pay $19 million in restitution, not withstanding the fact that the hedge fund knowingly failed to disclose material liquidity, and financial problems to the New York City Corrections Officer Union (C.O.B.A.). Appellee was permitted to self-surrender to a Bureau of Prisons (B.O.P.) facility to be designated. Appellee timely self-surrendered and served almost two years of the imposed sentence prior to his transfer to home confinement.

<u>Huberfeld's Sentencing</u>

On June 22nd, 2022, Defendant Murray Huberfeld appeared before Judge Lewis J. Lyman for sentencing on a superseding Information charging him with conspiracy to commit wire fraud in connection with the generation of $60,000 which Platinum Partners Hedge Fund Management provided (A-108).

Huberfeld played a "pivotal role" attendant to C.O.B.A.'s decision to invest in Platinum Partners. Judge Lyman noted that Huberfeld believed that C.O.B.A. would benefit from the investment (T-147). As a founder of Platinum Partners (and as Judge Lyman noted), he both (a) remained associated with, and (b) an investor in Platinum Partners, and (c) shared in its profit (A-115). He knew (and knowingly failed to disclose) that Platinum was suffering from a significant redemption imbalance (A-117). Huberfeld continued in 2015 to pressure Appellee to invest additional funds in Platinum Partners even though he knew of its financial

difficulties (A-116). Notwithstanding Huberfeld's role, and prior conviction (A-113), Huberfeld was sentenced to serve a seven month sentence (A-153).

Jonah Rechnitz is scheduled to be resentenced this June by Judge Failla. His relatives were investors in Platinum Partners, and C.O.B.A.'s investment shored up investor withdrawals. A panel of this Court vacated his initial conviction (see *United States v. Rechnitz*, 75 F. 4th 131, 144 [2nd Cir. 2023]). He denied knowing of Platinum Partners' liquidity problems.

The COVID-19 Pandemic

The COVID-19 pandemic initially appeared in late 2019. While the precise source of the COVID-19 virus is suspected to have arisen in Wuhan, China, the "World Health Organization" (W.H.O.) reported more than seven million deaths. The U.S. Center for Disease Control and Prevention has noted that some 900 U.S. residents have died weekly from the virus even as late as 2024. Life expectancy of New York City residents materially declined from 82.6 years to 78 years[*].

In late July, 2021, Appellee submitted an application to the Warden seeking compassionate release based upon *inter alia*: (a) C.O.P.D., (b) asthma, and (c) hypertension. The Warden denied the application on or about August 9th, 2021.

---

[*] New York Times, January 29th, 2025 p. A-20: "New York City Releases Plan to Increase Life Expectancy," by Joseph Goldstein.

Appellee's Compassionate Release Application

On October 31st, 2022, Appellee moved pursuant to 18 U.S.C. 3582(c)(1)(A) for "compassionate release" noting *inter alia* his: (a) age, (b) diagnosed medical condition, (c) the risk of COVID-19 (which continues to cause the deaths of Americans both directly and by triggering fatal ancillary causes), and (d) disputing that his release was violative of the statutory sentencing factors codified in 18 U.S.C. 3553(a). The Government filed no sworn opposition, but opposed the application in a "Memorandum of Law" dated November 21st, 2022.

The Court's Decision

On February 23rd, 2023, Judge Hellerstein addressed Appellee's application and granted compassionate release (A-99). Judge Hellerstein recognized that compassionate needs, standing alone, provided an insufficient legal basis to grant compassionate release under the "First Step Act" (A-102-103).

The Court, accordingly, gave focused consideration to the sentencing factors enumerated in 18 U.S.C. 3553(a) and *United States v. Brooker*, 976 F. 3d 228, 237 [2nd Cir. 2020]. Judge Hellerstein was presumably mindful of *United States v. Zullo*, 976 F. 3d 228 [2nd Cir. 2020], which held that the only limit on District Court discretion was that rehabilitation was prohibited. The issue of "sentencing disparity" was addressed (A-104). Only after Appellee had served 21 months in jail (three times longer than the sentence imposed upon Defendant Huberfeld [A-105]),

5

Appellee was released from B.O.P. custody, but his 58 month sentence was not reduced.

Some District Judges have recognized that the B.O.P. was not staffed (or ready) to protect its inmates from health conditions. Recently, in *United States v. Tagliaferro*, __ F. Supp. 3d __ [S.D.N.Y. 2024], Senior Judge Loretta A. Preska granted compassionate release of a labor union chapter president convicted of bribe receiving to gain entry into the Carpenter's Union. She reduced Tagliaferro's sentence to "time served." By contrast, Judge Hellerstein simply ordered that Appellee serve the remaining balance his sentence on home confinement.

Appellee, by virtue of Sentencing Guideline Amendment 821, has been reduced to a "zero point offender" (see e.g. *United States v. Arejelo*, __ F. Supp. 3d __ [E.D.N.Y. 12/13/24]), and under home confinement since his release from B.O.P. custody.

On December 23rd, 2024, some 22 months following Appellee's release, the Government perfected its appeal, even though Appellee has served (a) 22 months in a B.O.P. facility, and (b) 22 months on home confinement without incident (or any new charges), and (c) Appellee as a "zero point offender" is eligible for a two level sentence reduction to a guideline level 22, with a sentencing range between 41 and 51 months, and prior to earned "good time" sentence credit of at least 54 days per year. This can involve 15 days for every 30 days of consistent

programming prior to a transfer to community confinement pursuant to 28 C.F.R. 570.21(b).

## ARGUMENT

**THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN ORDERING THE RELEASE, OF A NON–VIOLENT FIRST OFFENDER WITH DOCUMENTED MEDICAL ISSUES, AFTER SERVING ALMOST TWO YEARS IN PRISON TO HOME CONFINEMENT. THE IMPOSED SENTENCE WAS NOT REDUCED.**

The Government seeks to overturn Senior District Judge Alvin K. Hellerstein's discretionary decision (A-99) to release a 64 year-old first offender Defendant* convicted of a non-violent crime (honest services fraud), and who has served almost two years of his remaining sentence without incident on home confinement and under the supervision of the Probation Department. Having failed to hold the Platinum Partners hedge fund principals responsible for defrauding the Corrections Officers Benevolent Union (C.O.B.A.), the Government now seeks to have this Court substitute its judgment for the nuanced decision by a seasoned District Court Judge.

A District Court has broad statutorily conferred discretion when adjudicating an application for compassionate release (*United States v. Brooker*, supra.; *United States v. Zullo*, supra.). Mere disagreement with the manner in which the motion

---

* Appellee turns 65 on February 23rd, 2025.

court balanced the 3553(a) factors is not a sufficient basis for a rending of abuse of discretion. Reasonable minds can frequently disagree.

There is, however, a strong presumption that the District Court considered all the 3553(a) factors (*Chavez-Meza v. United States*, __ U.S. __, 138 S. Ct. 1959, 1961 [2018]). That discretion was subsequently elucidated in *Concepcion v. United States*, 597 U.S. __, 142 S. Ct. 2389-2400 [2022] rev'g 991 F. 3d 289 [1st Cir. 2021](court can consider post-sentencing developments when adjudicating an application for First Step Act relief). Here, as in *Concepcion*, supra., the District Court made clear that his decision had appropriately "reasoned through" the argument raised (*Concepcion*, supra. p. 2404).

In *United States v. Halvon*, 26 F. 4th 566, 570-71 [2nd Cir. 2022], a panel of this court upheld Senior District Judge Kaplan's denial of compassionate release, noting that Halvon (a career criminal) was serving a ten year term of imprisonment as a second felony offender, and the crime he committed was while on supervised release. Judge Kaplan providently relied upon the statutory 3553(a) criteria in determining that Halvon's release, from his second conviction, posed an undue risk to public safety. No such concerns apply to the case at bar. *Halvon* noted that no one 3553(a) factor is determinative.

The Government's reliance on *United States v. Fernandez*, 104 F. 4th 420 [2nd Cir. 2024] is misplaced, and Circuit Judge Sack's decision is distinguishable.

8

Fernandez was a hired "backup shooter" in a plot to murder two Mexican drug cartel members who had traveled to New York City to collect the proceeds of a 270 kilogram cocaine shipment sold to a local drug trafficker.

Fernandez proceeded to trial, and was convicted and sentenced to serve a <u>mandatory</u> life sentence. Fernandez based his application for compassionate release on "potential innocence" and sentencing disparity. It was upon this foundation Fernandez was released from a Bureau of Prisons jail and placed upon supervised release.

The Fernandez decision noted that "potential innocence" is procedurally considered only through a post-judgment motion pursuant to 28 U.S.C. 2255. Accordingly, the District Court's reliance on perceived "potential innocence" prompted the reversal and the discussion addressed to sentencing disparity was *dicta*. However, on page 429 in footnote 4, the panel expressly did not foreclose "sentencing disparity" between a defendant who proceeded to trial and a co-defendant who pleaded guilty and cooperated.

18 U.S.C. 3553(a)(6), Sentencing Guideline 5 K 2.0, and 1.1.1.13(b)(1)(4) recognize that the avoidance of "sentencing disparity" constitutes an appropriate sentencing concern. The United States Supreme Court has not yet addressed the issue (see e.g. *United States v. Keitt,* 21 F. 4th 67, 71-72 [2nd Cir. 2021]). Keitt was 21 years old, and serving a mandatory minimum 60 month sentence. Here Senior

9

Judge Hellerstein, not unmindful of the risk of COVID-19 to Bureau of Prisons (B.O.P.) inmates, only granted Defendant Seabrook's application for "compassionate release" after careful consideration of his submission, and his service of 21 months in a West Virginia prison, although a senior citizen first offender, with zero criminal history points, convicted of a non-violent crime.

Appellant devotes a considerable portion of its brief to defending sentencing variance, which may arise between defendants who plead guilty (and/or cooperate), and those who elect to proceed to trial. We do not challenge the lesser sentences imposed by District Judges.

However, the fact that some may have positioned themselves to receive lesser sentences does not mean that the variance between the sentences is not *prima facie* indicia of disparity.

Here, Appellee, we note, has served <u>three times more</u> than the other defendants when his sentence was modified to allow the balance to be served on home confinement. Judge Hellerstein <u>did not reduce</u> Appellee's sentence by a single day. Rather, he simply (and sensitively) responded to the risk of COVID-19 infection, a worldwide pandemic particularly virulent to senior citizens and those, like Appellee, with diagnosed pre-existing respiratory conditions (asthma), and mindful that the B.O.P.'s medical services were both limited, and deficient.

Now, Appellee has served a total of about 48 months of his 58 month sentence. With earned "good time," and "First Step Act" credit of 15 days per month, coupled with Appellee's zero offender status and pre-existing health conditions, it posits the case on the veritable cusp of jurisprudential mootness.

*Berger v. United States*, 295 U.S. 78, 88 [1935] rev'g 73 F. 278 [2nd Cir.], reminds those who exercise prosecutorial power of the impact which their decisions have, and the responsibility to insure that justice be done. At a time when a significant segment of America perceives the Department of Justice to be "weaponized," the Government's continued campaign to remand Appellee to potentially serve the residue of the sentence raises troubling questions of equity, fairness, and judgment.

That Judge Hellerstein acted during COVID-19 with a sense of "rachmones" (compassion) apparently offends those in the United States Attorney's Office. Had Appellee contracted the disease and died, Government counsel would disclaim responsibility, and deflect attention to a Bureau of Prisons which was understaffed, undereducated, and unprepared to protect federal inmates.

It is much like the Auric Goldfinger character in the James Bond film "Goldfinger," who, when Bond, strapped to a gurney and targeted by a laser, asked Goldfinger what he wanted, replied "I want you to die."

11

Appellee urges the Court to turn away from a questionable Government appeal which smacks of vindictiveness, and a disturbing conscious avoidance for the consequences of remanding an almost 65 year-old African-American defendant who, by the time this appeal is adjudicated, will have served two years on home confinement without any claimed violation of the conditions of his release, or arrests or convictions, brings the case to the cusp of mootness (*United States v. Key*, 602 F. 3d 492, 495 [2nd Cir. 2010]; *United States v. Shaw*, 354 Fed. Appdx. 439 [2nd Cir. 2009]; *United States v. Mazza-Alayf*, 621 F. 3d 205 [2nd Cir. 2013]). The only abuse of discretion which Appellee perceives is a federal prosecutor who disagrees with Judge Hellerstein's exercise of discretion to release a non-violent first offender at material risk due to the COVID-19 pandemic.

## **CONCLUSION**

THE ORDER APPEALED FROM SHOULD BE AFFIRMED. ANY CONTEMPLATED CORRECTIVE ACTION IS MOOT.

Dated: New York, New York
      February 6, 2025

                              Respectfully submitted:

                              *s/*
                            _____
                            ROGER BENNET ADLER, P.C.
                            *Attorney for Defendant-Appellee*
                            233 Broadway – Suite 2340
                            New York, New York 10279
                            (212) 406-0181

ROGER BENNET ADLER
*Of Counsel*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 2,409 words in this brief.

*s/*
ROGER BENNET ADLER, P.C.
*Attorney for Defendant-Appellee*
233 Broadway – Suite 2340
New York, New York 10279
 (212) 406-0181